NEW ENGLAND IRON WORKS COMPANY & others *vs.* PAUL H. JACOT & others.

Suffolk. November 18, 1915. — March 3, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Equity Jurisdiction,* Damages for breach of contract. *Damages,* In equity.

In a suit in equity, in which the only material question came to be whether the defendant was liable in damages and, if so, for what amount for failing to carry out the terms of a contract to supply a sum of money to a certain corporation

for a particular purpose, it appeared that the corporation was unable to pay its debts and already owed the defendant a large amount of money, that the defendant agreed to lend the corporation "such sum not exceeding $25,000 as may be necessary to complete the second unit now in process of construction and to place the same in operation," that thereafter the defendant lent the corporation more than $31,000, that about $6,000 of this was expended in the construction of the addition to the plant of the corporation called the "second unit," about $5,000 of it was spent on remodelling and repairs and the remaining amount of about $20,000 was used in running the business, that, if this had not been done, the business would have been ruined, that it would have required $11,000 more to have completed the second unit, but that the second unit, if completed, would have been uselsss if the business had come to an end during its construction. *Held,* that it had not been shown that the plaintiff had suffered any damage from the defendant's failure to carry out the terms of his contract, it being probable that, if he had complied strictly with his agreement, the plant would have been closed down for lack of working capital, so that the damages claimed by the plaintiff were too uncertain and speculative to be capable of ascertainment; and accordingly the bill was dismissed.

DE COURCY, J.   This bill was brought by creditors to restrain the Federal Trust Company from foreclosing a mortgage held by it on the property of the Central Ice Manufacturing Company; and also to secure the specific enforcement of a certain written agreement of the defendant Jacot with the plaintiffs and other creditors of the ice company.   Interlocutory decrees were entered confirming the master's original and first supplemental reports, dismissing the bill as to the Federal Trust Company, and recommitting the case to the master to ascertain and report the damages, if any, which the plaintiffs have sustained by reason of the defendant Jacot's failure to furnish funds in accordance with the written agreement referred to.   The plaintiffs now waive all claims against the Federal Trust Company, and concur in the ruling that specific performance should not be ordered as against Jacot (who hereinafter is referred to as the defendant).   The exceptions taken by that defendant to the original report also have been waived.   This practically disposes of the main objects originally sought in the bill of complaint.

The material questions now before us * are those raised by the exceptions of the defendant Jacot to the master's second supplemental report.   Before considering these it is necessary to set out certain material facts.   On October 28, 1913, the Central Ice Manufacturing Company was in bad condition financially.   In the opin-

* The case was reserved by *Braley,* J., for determination by the full court.

ion of the master, its property as a going concern was worth from $75,000 to $100,000 over the mortgage to the Federal Trust Company; but it had an outstanding indebtedness of $248,865.52, of which $170,066.05 was unsecured. The defendant Jacot already had invested in the plant and business the sum of $182,087. As the result of negotiations a written agreement was entered into on that date, between the ice company, its other creditors and Jacot. One part provided for the exchange of preferred stock of the corporation for the claims of such creditors as would elect a settlement on that basis. The other part provided in substance for an extension for two years of the payment upon the claims of those creditors who preferred this adjustment, and meanwhile the payment to them *pro rata* of the surplus earnings. Among other things Jacot agreed "that he or his associates will loan to the company such sum not exceeding $25,000 as may be necessary to complete the second unit now in process of construction and to place the same in operation." Since October 28, 1913, he has in fact advanced to the company the net amount of $31,140.08. Of this sum $5,781.68 was expended in the construction of the second unit, and $4,917.42 was spent on remodelling and repairs. The master finds that $11,000 is necessary to complete the second unit, so as to have it in good operable condition in conjunction with the first unit as it now exists.

On November 13, 1914, the trust company, as trustee under the mortgage, took possession of the premises and property of the ice company for the purpose of foreclosure; and it has since been in possession, and conducting the business of the company as mortgagee. The master finds that the Central Ice Manufacturing Company is now insolvent, its liabilities being in excess of its assets.

The defendant Jacot, by his exceptions to the supplemental report, seeks to raise mainly two questions, namely, whether there was a breach of the written agreement of October 28, 1913, and whether the master was in error in his rulings as to damages. In assuming that there was a breach by Jacot, the master acted within the terms of the interlocutory decree of June 22, 1915. The defendant's appeal from that decree cannot be sustained in view of the master's findings in his first report, in the absence of the evidence on which they were based. Although he did advance more than the $25,000 required, the master finds that he "intentionally

failed or neglected" to see that it was applied to the construction of the second unit, and knew that a large part of it was being used for the running of the business.

But it does not necessarily follow that the plaintiffs were damaged by the defendant's failure to apply his money solely in the construction of an addition to the plant. His main contention is that it appears as matter of fact that they were not damaged thereby; and he argues further that the rule of damages adopted by the master is erroneous. As already appears, if the defendant, instead of loaning to the company $31,000, as he did, had advanced only the $5,781.68, which already has gone into the second unit, and the $11,000 needed to complete it, and had seen to it that the money was so applied, there would have been no breach of his agreement. But it seems equally clear from the findings of the master that if Jacot had done just this, the business would have been ruined. He finds that "without additional capital being furnished, it would have been necessary, if $25,000 out of the money which Mr. Jacot furnished had been used in building the second unit, to close the plant for four or five months." And, "if the ice company had been obliged to shut down for four or five months, the conditions in the summer of 1914 were such that, even if working capital had thereafter been provided, it would have been practically impossible to have built up a new business, and conduct it at a profit, before the filing of the plaintiffs' bill of complaint." Again, "the officers and directors of the company had certainly made strenuous and all reasonable efforts to obtain sufficient capital to keep the plant running, but without success."

When the creditors' agreement was made, October 28, 1913, the parties apparently believed that the building of the second unit was all that was necessary, in order to overcome the financial difficulties of the ice company. And, as pointed out in the master's last report, before the entry of the interlocutory decree denying specific performance, this suit was tried on the theory that if Jacot's loan had completed the second unit, the business would have been conducted at a sufficient profit to enable the ice company to pay its creditors at the end of the extension period, October 28, 1915. It is plain from the master's findings that this was a mistaken view. As was stated in the first report, "If the money which Mr. Jacot furnished had been used in completing the second unit, it would

have been necessary for the ice company either to shut down and temporarily discontinue business while the unit was being built, or else secure other working capital elsewhere. Practically the same problem exists today. The company cannot exist and do a successful business unless both conditions are met. The plant should be completed and working capital provided." Under these, and similar findings, the plaintiffs fail to show that they suffered any damage by the failure to use Jacot's money for the completion of the second unit. He was not obliged to furnish working capital. And without sufficient working capital the plant could not have been kept running, much less operated at a profit. And the report makes evident the fact that it was conjectural and very improbable that working capital could be obtained elsewhere to keep the business running, build a storehouse, and produce an output economically that could have been disposed of in a ready market at a profit. These and other contingencies of the business would have to be successfully met before the ice company could acquire any profits; and even then the application of such surplus to the claims of the plaintiffs would be determined by the business judgment of the directors, acting with a view to promote the interests of the corporation in the existing circumstances.

As was said by Rugg, C. J., in *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21: "The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts." In view of the findings already mentioned — and which are not controlled by any others in the master's report — it seems plain that the contention of the plaintiffs, that their claims against the ice company have been lessened in value by the failure of the defendant Jacot to see to it that $25,000 out of his $31,000 loan to the company was applied to the construction of the second unit, rests chiefly on conjecture and speculation. This is true not merely as to some necessarily indefinite elements of damage, but as to the damages as a whole. The application to

the second unit of the $11,000 needed to complete it, would not have assured the carrying on of the business, much less the earning of profits and the application of them to the plaintiffs' claims. On the contrary, the probabilities, as disclosed by the record, are that the plant would have been closed down for lack of working capital and the mortgage foreclosure hastened, if the defendant had strictly complied with his agreement. In short, whether the plaintiffs would have received anything on their claims if Jacot's contract had been kept is uncertain, contingent or speculative. 8 R. C. L. 438, 442. *Central Trust Co.* v. *Arctic Ice Machine Manuf. Co.* 77 Md. 202. *Consumers' Pure Ice Co.* v. *Jenkins,* 58 Ill. App. 519. *Howard* v. *Stillwell & Bierce Manuf. Co.* 139 U. S. 199. *Allis* v. *McLean,* 48 Mich. 428. See *John Hetherington & Sons, Ltd.* v. *William Firth Co., ubi supra,* and cases cited.

We are of opinion that the defendant Jacot's first, second and fourth exceptions * to the master's report must be sustained. As this disposes of the vital controversy in the suit, it is unnecessary to consider the other defences argued, or to discriminate as to the several rights of the different plaintiffs. The bill is to be dismissed as against Jacot and the Federal Trust Company. No brief has been filed on behalf of the Central Ice Manufacturing Company; but as, apparently, it has not refused to deliver to the New England Iron Works Company or to Augustus Keough the shares of stock to which they became entitled under the so called exchange agreement, the bill should be dismissed as to that defendant also.

<em>Decree accordingly.</em>

*H. T. Richardson,* for the plaintiffs.
*C. J. Martell,* for the defendant Jacot.

---

* The first and second exceptions were based upon objections to the effect that the master had adopted an erroneous rule of damages. The fourth exception was founded on the following objection: "For that the master has found that the plaintiffs were entitled to damages which could only be correctly based upon the additional value that the completion of the second unit would give to the plant and its assets, and such additional value is necessarily a matter of pure speculation and uncertainty, and impossible of ascertainment for the purposes of assessing legal damages."