LALIME AND PARTRIDGE, INCORPORATED, *vs.* GEORGE R. HOBBS.

GEORGE R. HOBBS *vs.* LALIME AND PARTRIDGE, INCORPORATED.

Suffolk.    December 9, 1925. — February 27, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Sale*, Warranty. *Contract*, What constitutes. *Agency*, Scope of authority, Ratification of acts of agent. *Damages*, For breach of contract: prospective profits.

A salesman for a corporation dealing in tractors, negotiating with a prospective purchaser of a second hand tractor, was told the work which the prospective purchaser desired of a machine and replied that he would put in a tractor which he guaranteed would do the work. The tractor was shipped and with it an "invoice" which had on it the words, "as is." The tractor did not do the work required of it. In an action by the purchaser against the seller for breach of warranty, it was *held*, that

(1) It was a question for the jury whether the plaintiff was induced to buy because of the affirmations of fact by the defendant's salesman; if the purchase was found so to have been caused, there was an express warranty of the tractor;

(2) The paper writing referred to as an invoice, which accompanied the delivery, formed no part of the contract of purchase.

There was further evidence at the trial of the action above described, that, after the failure of the first tractor to do the work required, the salesman suggested a second second hand tractor, stating, "put on another tractor, and the two will walk away with it. . . . I will guarantee that it will walk away with it"; that, after the second tractor was installed, both failed, in the salesman's presence, to work; that, at an interview, after the delivery of the second tractor, between the plaintiff, the defendant's president and the salesman, the plaintiff stated the warranty made by the salesman, which statement the salesman did not deny, and the president ordered an employee and the mechanic of the defendant to examine and make whatever repairs were necessary to make the tractors usable; that such efforts resulted in leaving one tractor a complete wreck while the other was taken away and never was returned by the defendant. The jury found specifically that the defendant's president ratified the warranty. *Held*, that

(1) The jury, disbelieving testimony of the defendant's president, were warranted in finding that there was no limitation of ostensible powers of the salesman of which the plaintiff had knowledge and that in his dealings with the plaintiff such powers were his real powers;

(2) The jury were warranted in finding that the defendant had ratified the warranty by the salesman and in finding for the plaintiff. In the action above described, it was proper to exclude evidence offered by the plaintiff, as the basis for damages in the loss of prospective profits, which tended merely to show that at the time of the negotiations the plaintiff showed the defendant a quantity of lumber in his yard to be made into boxes, and mentioned a contract for making seventy-five thousand boxes at ten cents apiece and that he had a contract to sell boxes to two different persons "and had to get the stuff out"; and that about two months after the sale of the first tractor and about one month after the sale of the second, the plaintiff made such a contract in writing with his customer.

CONTRACT, upon an account annexed, for the price of a second hand tractor (called No. 3 tractor in the record to distinguish it from the two tractors which formed the subject matter of the second action) and accessories, parts, and labor in connection therewith. Writ dated November 7, 1922. Also an action of

CONTRACT by the defendant in the first action against the plaintiff therein for a breach of warranty in the sale of two second hand tractors. Writ dated December 14, 1922.

In the Superior Court, the actions were tried together before *Morton*, J. Material evidence is described in the opinion. The invoices referred to in the opinion had on them the words, "as is." In the first action, by order of the judge, a verdict was entered for the plaintiff in the sum of $935.26. In the second action, the judge submitted to the jury questions which, with the jury's answer thereto, were as follows:

"Did Schroeder warrant the tractors to have the power required in the plaintiff's works?" The jury answered, "Yes."

"Did Mr. Partridge ratify the warranty, if any, made by Schroeder?" The jury answered, "Yes."

"Did the tractors fail to have the power required in the plaintiff's works?" The jury answered, "Yes."

There was a verdict for the plaintiff in the second action in the sum of $400.

The judge reported the two actions to this court for determination of the questions of law described in the opinion.

*T. W. Proctor*, for Hobbs.

*C. P. Houston*, for Lalime and Partridge, Incorporated.

BRALEY, J.   The defendant in the first case not having argued his exceptions to the admission of evidence, they are treated as waived, and he not having excepted to the order of a verdict for the plaintiff, no error of law is apparent on the record.

In the second case the plaintiff, a manufacturer of boxes, bought of the defendant, hereafter called the company, a tractor to furnish power to operate his machinery.   It is alleged that, the tractor upon trial being insufficient, he bought a second tractor, but, when used in combination, the tractors did not develop the power required.   The counts in deceit having been waived, he claims under the counts in contract that the company expressly warranted each tractor as sufficient to do the work, and because of the result just stated he claims damages for breach, with an allegation of special damages for loss of prospective profits.

The sales were negotiated by one Schroeder, the company's salesman, and, while the evidence was conflicting, the jury would have been warranted in finding that as to the first tractor the plaintiff told him that he wanted power to run the shafting and that Schroeder replied that he would put in a tractor which he guaranteed would do the work.   The plaintiff said "send it over."   It was delivered, but the jury could find it failed to do the work.   The plaintiff informed Schroeder of the result, who, after an examination of the situation, said, "there is too much load on; put on another tractor and the two will walk away with it; . . . I will guarantee that it will walk away with it."   The plaintiff said "send it over."   The second tractor was delivered but after trial at which Schroeder apparently was present, the jury also could find the tractors when used in combination failed to do the work.   The plaintiff paid for both tractors.   It was a question for the jury whether the plaintiff was induced to buy because of these affirmations of fact, and relied upon them.   If so found, there was an express warranty of each tractor.   *Cavanaugh* v. *D. W. Ranlet Co.* 229 Mass. 366. *Ireland* v. *Louis K. Liggett Co.* 243 Mass. 243, 246.   Williston on Sales, (2d ed.) § 197.   G. L. c. 106, § 14.

The contract for each tractor was entire on the record, and the paper writing referred to as an invoice which accompanied each delivery formed no part of it. The contracts were made when the parties entered into their oral agreements, and the invoices, so called, subsequently transmitted and received, did not as matter of law show a rescission, and the substitution of the invoices in whole or in part as a written contract. *Pickard* v. *Beers*, 195 Mass. 419, 423, 428. *Edgar* v. *Buck & Sons Corp.* 172 Mass. 581, 582. *Bennett* v. *Thomson*, 235 Mass. 463, 467. *Blanchard Lumber Co.* v. *Maher*, 250 Mass. 159. See *Glackin* v. *Bennett*, 226 Mass. 316, 319.

While one Partridge, the president of the company, testified that even if Schroeder had authority to sell, he had no authority to warrant the tractors, the jury were not bound to believe him, but on all the evidence they could find there was no limitation to his ostensible powers of which the plaintiff had knowledge, and that in his dealings with the plaintiff such powers were his real powers. *Danforth* v. *Chandler*, 237 Mass. 518. *Blanchard Lumber Co.* v. *Maher*, 250 Mass. 159, 163. It moreover was in evidence, that at an interview after delivery between the plaintiff, the president and Schroeder, the plaintiff stated the warranty made by Schroeder, which statement Schroeder did not deny, and the president ordered an employee and mechanic of the company to examine and make whatever repairs were necessary to make the tractors usable. It further appeared and could be found, that these efforts resulted in leaving one tractor a complete wreck, while the other was taken away and never returned by the company. The jury were justified in finding specially, that Schroeder warranted the tractors, and that Partridge ratified the warranty, and that the tractors failed to furnish the required power.

The company's first request that the jury be instructed to return a verdict for the defendant was denied rightly, and its remaining requests in so far as argued were properly refused, or are rendered immaterial by the special findings of the jury.

The exceptions of the plaintiff to the refusal of his requests

not having been argued, are treated as waived leaving only his exceptions to the exclusion of evidence affecting the measure of damages. The plaintiff testified, that he showed Schroeder a quantity of lumber in his yard to be made into boxes, and mentioned a contract for making seventy-five thousand boxes at ten cents apiece, and before making a trade "about the tractor" he told Schroeder that he had a contract to sell boxes to two different persons "and had to get the stuff out." The plaintiff then offered a contract dated July 31, 1922, of the Market Supply Company for the manufacture of seventy-five thousand boxes to be delivered at the rate of one thousand boxes a day, or as near that number as possible, and also offered to show that the profit on each box, over the cost of manufacture, would result in a net profit of $4,518.63. But upon objection of counsel for the company, the contract and offer of proof were excluded. The ruling was right. The contracts for the tractors were respectively entered into June 5 and July 5, 1922, and the plaintiff also testified that he told Schroeder, that one "Gallagher would take all the boxes I could give him." It would be unreasonable however to hold that there existed an obligation under which damages to business might be recovered unless it was mutual, and nothing in the terms of the contracts raises such implication. *Curtis* v. *Boston Ice Co.* 237 Mass. 343, 351. We are accordingly of opinion that the loss of prospective profits was not within the mutual contemplation of the parties when the contracts were made as was held in *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, and *Dondis* v. *Borden,* 230 Mass. 73.

The instructions to the jury, to which the company also excepted, that if they found for the plaintiff he was entitled to recover the difference in value of the machines sold, and the price to be paid by him therefor, were sufficiently favorable to the defendant. G. L. c. 106, § 58 (7).

The entry in each case must be,

*Judgment for the plaintiff on the verdict.*