THE H. D. WATTS COMPANY *vs.* AMERICAN BOND AND MORTGAGE COMPANY.

SAME *vs.* WILLIAM J. MOORE.

Suffolk. January 14, 15, 1929. — June 5, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Unlawful Interference. Release. Contract,* Validity, Inducing breach of contract, Building contract. *Damages,* In tort. *Actionable Tort. Agency,* Existence of relation, Termination of relation. *Practice, Civil,* Requests, rulings and instructions; Exceptions.

This court, having decided as reported in 260 Mass. 599, that a verdict for the plaintiff was warranted on all the evidence and offers of proof at the trial together of two actions of tort by a contractor, respectively against a bonding company and its president, for damages resulting from the defendants' having unlawfully induced and coerced a hotel corporation to break a contract in writing between it and the plaintiff for the construction of a hotel and to enter into a contract for the construction of the building with another corporation engaged in the contracting business and directly or indirectly controlled by the defendants, *held,* that the evidence at a second trial of the actions together was not sufficiently different from that at the first trial to warrant a different conclusion from that reached in the previous decision; and that, therefore, motions by the defendants, that verdicts be ordered in their favor at the close of the evidence at the second trial, properly were denied.

An issue at the second trial above described was whether a certain man, who previously had been employed by the hotel corporation, was authorized to act for the defendants in inducing the hotel corporation

to break its contract with the plaintiff. There was evidence that the individual defendant, while discussing with the plaintiff certain details as to his costs, said, "I don't wish to discuss this matter any further with you. . . . [the man] know[s] what I want, and . . . [he is] handling this matter for me, and anything more that you have got to say, say it to . . . [him]"; that the plaintiff had direct dealings with that defendant after he had made the quoted statement; and that that defendant was acting for the defendant corporation as well as for himself. *Held,* that

(1) A finding was warranted that, notwithstanding the previous employment of the man by the hotel corporation, he later became agent of the defendants;

(2) The evidence as to the plaintiff's direct dealings with the individual defendant after his statement to the plaintiff did not require a finding that the man's authority to act for the defendants had been terminated.

Certain documents signed by the plaintiff in the action above described, stipulating that the hotel corporation should make certain payments to the plaintiff and procure for him certain shares of its stock as a condition precedent to his releasing it from its contract with him, did not of themselves constitute a release or cancellation of the contract; and, in the absence of evidence of the performance of the stipulated conditions, a contention by the defendants that the contract had been cancelled could not be supported.

A contract for the construction of a building, wherein the contractor agreed "to provide all the materials and to perform all the work shown on the drawings and described in . . . [certain] specifications [referred to]," and it was provided that "The work to be done hereunder is that which is described in the specifications and shown upon the drawings hereinbefore referred to," was not too indefinite to be capable of enforcement.

In an action of tort for wrongfully inducing a breach of contract, the plaintiff may recover damages for such loss of profits, which he would have received under the contract but for such interference, as he has proved with reasonable certainty resulted directly and proximately from the defendant's acts: there can be no recovery for loss of speculative or conjectural profits.

Upon all the evidence at the trial above described, including evidence as to the probability of the plaintiff's being able to build the hotel for the price specified in his contract, as to the acquirement of land for the hotel by the hotel corporation, as to arrangements made, at about the time the plaintiff's contract was executed, for financing the construction of the hotel, and as to the failure of those arrangements and the inability of the construction corporation, with which a construction contract had been made by the hotel corporation after the plaintiff's contract had been broken, to complete the erection of the hotel, it was *held,* that the question, whether the plaintiff had proved with reasonable certainty that he would have received a profit from his contract if the hotel corporation had not been induced wrongfully to break that contract, was for the jury.

At the trial above described, there was evidence that, after the plaintiff's contract with the hotel corporation had been made, the defendant corporation made a contract with the hotel corporation relative to providing the money necessary to the construction of the hotel; that the financing contract later was terminated by mutual consent of the parties thereto; and that thereafter the plaintiff's contract was broken by the hotel corporation, a new construction contract was made with the construction corporation and a new financing contract made with the defendant corporation. In giving a ruling requested by the defendants, to the effect that they had a right to refuse for any motive to contract with the hotel corporation relative to financing the construction of the hotel, even if the hotel corporation broke its contract with the plaintiff as a result of such refusal, the trial judge qualified it by adding "unless the defendant in making such refusal had in mind the bringing about a breach by . . . [the hotel corporation] of its contract with the plaintiff." The defendants saved an exception. In his charge to the jury, the judge stated that, if the defendants merely refused to assist in financing the construction of the hotel, but did nothing actively to induce the hotel corporation to break its contract with the plaintiff, they would not be liable; and that the plaintiff could not recover by proving merely that such breach resulted incidentally from conduct of the defendants which was otherwise lawful. *Held,* that

(1) The effect of the words added by the judge to the defendants' request was to cause the jury to understand that the defendants might be held liable if their motive in refusing to contract with the hotel corporation was to bring about a breach of the plaintiff's contract with that corporation;

(2) The defendants rightfully could refuse to contract with the hotel corporation; and their motive in so doing was immaterial;

(3) The ruling as given was erroneous; it should have been given substantially as requested;

(4) The judge's instructions to the jury did not specifically correct the previous error, and, since it could not be ascertained upon which statement of law the verdict was based, the defendants' exception must be sustained.

Two ACTIONS OF TORT. Writs dated July 31, 1923, and September 4, 1923.

The actions were tried together in the Superior Court before *Walsh*, J. At the close of the evidence, the judge ordered a verdict for the defendant in each action. The actions previously were before this court upon exceptions by the plaintiff, and, by a decision reported in 260 Mass. 599, the exceptions were sustained.

The second trial of the actions together was before *Callahan*, J. Material evidence, rulings given and portions of the judge's charge are stated in the opinion. The plain-

tiff's contract with the Hotel Company provided in part as follows: "Article 1. The Contractor agrees to provide all the materials and to perform all the work shown on the drawings and described in the specifications entitled, 'Specifications for The Chatham Apartment Hotel, Brookline, Mass. . . .' a set of said specifications as finally revised, modified and determined upon as of the date of the execution of this agreement, having been initialed by the Presidents of the Contractor and the Owner, respectively, and delivered to the Contractor. . . . Article 7. The work to be done hereunder is that which is described in the specifications and shown upon the drawings hereinbefore referred to."

Exhibits 10 and 10A were as follows:

### EXHIBIT 10.

October 13, 1922.

The Chatham, Inc.,
Boston, Mass.

Dear Sirs:

In reply to your verbal request to the H. D. Watts Company asking it to cancel its contract with the Chatham, Inc., dated July 25th, to build the proposed apartment hotel in Brookline, Mass., we write to advise you of our decision which is as follows:

We understand from Mr. Tobey, Mr. Byrnes, Mr. Riddle and Mr. Clark that the Chatham Inc. will pay $25,000. and that these payments will be made at different times during the course of construction to the H. D. Watts Company, in sums of not less than $5,000. and that an agreement will be entered into at some later date between the Chatham Inc. and the H. D. Watts Company, which agreement shall be acknowledged by the American Bond & Mortgage Company. Said American Bond and Mortgage Company is to agree in writing to the payment of said notes out of the fund due the Chatham Inc. at such time as called for.

It is understood that in addition to the H. D. Watts Company cancelling its contract, I personally Harry D.

Watts agree to return the 1600 shares of the Chatham, Inc. common stock without any additional personal payment or additional payment to the company.

In addition to this $25,000. it is understood that I am to receive out of the commission paid by the Chatham, Inc. to Wm. A. White & Sons the sum of $5,000. making a total of $30,000. that I am to receive in consideration of the cancellation of the aforesaid mentioned contract.

Very truly yours,

The H. D. Watts Co.<br>Harry D. Watts Pres.

IBC:ID

Accepted:
The Chatham Inc.
By Clifford H. Byrnes, Attorney

It is understood that the above payments to the H. D. Watts Co. will be made one half in 3 months and one half in six months from the date of cancellation of the contract.

The H. D. Watts Co.<br>Harry D. Watts Pres.

Accepted:
The Chatham Inc.
By Clifford H. Byrnes, Attorney

----

EXHIBIT 10A.

October 13, 1922.

The Chatham, Inc.,
Boston, Mass.

Dear Sirs:

It is a condition of the agreement signed today for the release of our contract for the construction of the Chatham Inc. that you procure for and deliver to us $20,000. worth of eight per cent. accumulated preferred stock of the Chatham Inc. at 85.  We understand that you are going to procure this from the stock to be delivered to the architect.  We will be willing to accept an order from them on *you*, accepted by you to deliver this stock to *us*

when due them before the completion of construction of the building.

Very truly yours, .

(Sgd.)          The H. D. Watts Co.

Harry D. Watts Pres.

Accepted:

The Chatham Inc.

By G. H. Riddle V. P.

At the close of the evidence, the judge denied motions by the defendants that verdicts be ordered in their favor. There was a verdict for the plaintiff in each action in the sum of $322,400. The defendants alleged exceptions.

*R. G. Dodge & E. R. Anderson,* (*R. B. Owen* with them,) for the defendants.

*H. R. Bygrave,* (*W. Flaherty* with him,) for the plaintiffs.

SANDERSON, J.  These two actions of tort are brought by a construction company against the defendant bonding company and its president, respectively.  In each case the defendant is alleged to have unlawfully and maliciously induced, persuaded and coerced The Chatham, Inc., hereinafter called the Hotel Company, to break a contract which it had entered into with the plaintiff, in order to obtain the benefits thereof for the Longacre Engineering and Construction Company, hereinafter called the Longacre Company.

The cases were formerly before this court on exception of the plaintiff to directed verdicts for the defendants, and it was then held that the verdicts should not have been ordered. 260 Mass. 599.  At the second trial a verdict in the sum of $322,400 was returned for the plaintiff in each case.  The defendants' exceptions relate to the refusal of the judge to grant their motions for directed verdicts, to his refusal to grant certain requests for rulings, to the admission and exclusion of evidence, and to rulings given and refused.

There was evidence that the plaintiff, in July, 1922, had entered into a contract to construct an apartment hotel for the Hotel Company.  In August, 1922, the defendant corporation contracted to underwrite an issue of bonds of the Hotel Company to provide the money required to construct

the hotel; and the jury could have found that the defendants at the time this underwriting agreement was made had knowledge of the terms of the plaintiff's contract. It was undisputed that Moore refused to modify the terms of this underwriting contract and that it was abandoned by mutual consent in September or early in October, 1922. On or about November 9, 1922, Grabow, president of the Hotel Company, resigned and one Tobey was elected in his place. A new construction contract was then entered into between the Hotel Company and the Longacre Company, and a second underwriting agreement, bearing the same date as the new construction contract, was entered into between the Hotel Company and the defendant corporation, which contained the stipulation that the Longacre Company should have the contract for the erection of the hotel building. During the period between the abandonment of the first underwriting agreement and the making of the second no contractual relationship existed between the defendant corporation and the Hotel Company. The defendant Moore and members of his family held all but seven shares of the capital stock of the Longacre Company, and he was vice-president and a director, his son treasurer, and another son and a brother were directors. Moore was president, and owned a majority of the common stock, of the defendant corporation, of which his two sons and his brother were officers and directors. Most of the business of the Longacre Company was in the construction of buildings financed by the defendant corporation.

1. The evidence in the present record permits substantially the same inferences by the jury on the question of liability as did the evidence in the first trial. In support of the motions for directed verdicts the defendants have sought to point out material differences in the evidence in the two trials.

It was not contended in the presentation of the case to this court at the former trial, and it does not now appear to be contended, that Moore, while acting for himself, was not also acting for the bonding company. He testified that he acted for that company in all he did.

It is, however, contended that there is no evidence from which the jury could find that Clark, who was first employed by the Hotel Company to procure a contract for the sale of its mortgage bonds, and Tobey were authorized to act as agents of the defendants in wrongfully inducing the Hotel Company to break its contract with the plaintiff. In the earlier case, on consideration of the evidence introduced and of that contained in offers of proof, this court held that the question whether they were so authorized was for the jury.

At the present trial evidence was introduced which at the former trial had been in the form of offers of proof. There was some variance between the evidence thus introduced and that contained in the offers, but the changes are not such as to require the court to reach a different conclusion on this issue. In both trials there was evidence that, about the middle of September, 1922, after the question of the bond to be given by the plaintiff for the performance of its contract had been considered, and after Watts, the plaintiff's president, at Moore's suggestion had submitted the plaintiff's figures on costs to be checked up by one Thomas, vice-president and manager of the Longacre Company, Watts told Moore that Thomas and the plaintiff were not far apart on figures which he offered to show Moore, and the latter said, "I don't wish to discuss this matter any further with you. Mr. Clark and Mr. Tobey know what I want, and they are handling this matter for me, and anything more that you have got to say, say it to them." There is no difference in the legal significance of this evidence and of that contained in the offer of proof at the first trial. The jury could have found that notwithstanding the employment of Clark by the Hotel Company he later became an agent of the defendants. The evidence that Watts had direct dealings with Moore after Moore's statement concerning Clark and Tobey was made to him did not require an inference that the agency of Clark and Tobey had thereby been terminated.

The defendants contend in support of their motions for directed verdicts that there was no evidence at the second trial that Moore induced the Hotel Company to repudiate its contract with the plaintiff and award a contract to the

Longacre Company, with the object of getting the benefit of the contract for that company.

The statement of Moore set forth above was made about the middle of September, 1922. There was testimony that about the middle of October, 1922, Clark, just after an interview with Moore, from which Watts had been excluded, said to Watts, "It looks dark and gloomy for Grabow in this matter, because Moore is going to have Tobey president of this company. And . . . it looks dark for you, too, because he is not going ahead unless Longacre gets the building contract." Moore testified or admitted that Clark and Tobey told him in New York that they were going to Boston to eliminate Grabow and others and to install a "new crowd," that this substitution of new officers for the Hotel Company met with his approval, and that he made it conditional that he was to deal with the new set of men; that they were proposing to eliminate Grabow as a step toward getting the contract for the Longacre Company.

In October, 1922, there was a conference at Tobey's office in New York at which Clark, Tobey, Watts and two officials of the Hotel Company, one of whom owned substantially all of the stock of that company which had been issued, were present. There was evidence that in the course of that meeting Tobey said he was going in as president of the Hotel Company in place of Grabow, asked Watts what he would take for his contract then and there, and stated that he and Clark had seen Moore the day before and "there wasn't any earthly way of going ahead with the contract unless . . . [Watts] got out of the picture and Longacre built the building." Tobey tried to induce the plaintiff to give up its contractual rights, and the officials of the Hotel Company joined in urging it to compromise.

The jury could have found this evidence significant because of its tendency to prove the result which the defendants, through the agency of Clark and Tobey, intended to accomplish, and because of the suggestion in it of means to be employed; and could have found that the officials of the Hotel Company had been persuaded by the agents of the defendants to favor their interests and that as a result of what was

said at this meeting and at other times Grabow was induced to resign and the Hotel Company to take the subsequent action which resulted in a termination of its contract with the plaintiff. These talks were followed by the resignation of Grabow and another officer of the Hotel Company, and the election in their places of the men indicated at a conference between Clark, Tobey, Moore and the president of the Longacre Company. Contracts procured by Grabow to aid in financing the enterprise were cancelled when he resigned. On the day the new officers were elected, the directors of the Hotel Company authorized the new president and the treas·urer to enter into a contract with the Longacre Company for the construction of the hotel, and authorized the president to enter into an underwriting agreement with the defendant corporation.

This series of events culminating in the execution of a building contract with the company in which Moore had a financial interest, thereby excluding the possibility of the performance by the Hotel Company of its contract with the plaintiff, and followed by the execution of a new underwriting contract with the defendant corporation, when considered in the light of the other testimony, leads us to the conclusion reached in the former opinion that there was evidence upon which the jury could find that the defendants, through Clark and Tobey as their authorized agents, wrongfully induced the Hotel Company to break its contract with the plaintiff. The contention of the defendants, that the evidence permits of no further inference by the jury than that the defendants simply refused to enter into a new underwriting agreement while the plaintiff had the construction contract, cannot be maintained. The differences in testimony at the two trials are not sufficient to justify the court in coming to a different conclusion on this point from that reached in the first opinion.

The defendants further contend in support of their motions for directed verdicts that by virtue of Exhibits 10 and 10A the contract of the plaintiff with the Hotel Company had been cancelled by the parties. The first of these exhibits was considered in the earlier opinion but Exhibit 10A was not then in evidence. It is dated October 13, 1922, and provides,

in substance, that it is a condition of the agreement for release of contract that day signed that the Hotel Company procure for and deliver to the plaintiff a stated amount of its preferred stock; that the plaintiff understood the stock was to be procured from that to be delivered to the architects, and that it would be willing to take an accepted order from them on the Hotel Company to deliver the stock to the plaintiff when due the architects before the completion of construction of the building. This paper was signed by the plaintiff and bears the acceptance of an officer of the Hotel Company. The second agreement was supplementary to the first. The terms of these two exhibits could be found to have been brought home to Moore personally, and he might also be chargeable with the knowledge which his authorized agents had of their contents.

The contentions that these exhibits contemplated that a new construction contract was to be entered into by the Hotel Company; that there was no default in performance of any of the conditions stated in the exhibits before the new contract was entered into, and hence the making of the new contract could not be a breach of the contract with the plaintiff, fail to give consideration to the obvious purport of the exhibits. The conditions contained therein were apparently conditions precedent to any release becoming operative. In the absence of any evidence of performance of the conditions we must follow the decision reached in the earlier opinion when the court was considering one of these exhibits and hold that the documents in and of themselves do not constitute a release or cancellation of the contract.

The reference in the plaintiff's contract to the plans in evidence did not make it too indefinite to be a valid enforceable contract.

2. The defendants contend that there was no evidence to justify a verdict for substantial damages.

The damage recoverable for inducing a breach of contract is "the loss of advantages, either of property or of personal benefit, which, but for such interference, the plaintiff would have been able to attain or enjoy." *Walker* v. *Cronin*, 107 Mass. 555, 565. *Lopes* v. *Connolly*, 210 Mass. 487, 494, 495.

*H. D. Watts Co.* v. *American Bond & Mortgage Co.* 260 Mass. 599, 613. In such a case the damages assessed are not for breach of contract but for tort, and include such loss of profits as the plaintiff can prove resulted directly and proximately from the wrongful acts of the defendants. *Fox* v. *Harding*, 7 Cush. 516. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. *Anderson* v. *Moskovitz*, 260 Mass. 523, 527. The damages "must be capable of ascertainment by reference to some definite standard, either of market value, established experience or direct inference from known circumstances." *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 22. Unless the amount of the plaintiff's loss is so established, substantial damages cannot be recovered. *New England Iron Works Co.* v. *Jacot*, 223 Mass. 216, 220, 221.

If the contract between the plaintiff and the Hotel Company had been performed, the plaintiff would have been entitled to a sum equal to the cost to it of the materials and of the performance of all the work required to be done under the contract, "and in addition to such cost a net builder's fee or compensation of two hundred sixty thousand dollars ($260,000)." The verdict for the plaintiff was evidently based upon this agreed compensation with interest from the date of the writ.

The evidence upon which the plaintiff contends that the jury could find to a practical degree of certainty that it would have received this compensation if the Hotel Company had not been wrongfully induced to break the contract is substantially as follows: A building of the kind planned and described could have been built for the price called for in the plaintiff's contract or less. Prior to November 10, 1922, the Hotel Company held options for the purchase of the land on which the hotel was to be built, some of them having been obtained in the name of an official of the company in March and April, 1922. One of the options expired October 2, 1922, but was reinstated November 18, 1922. Subscriptions to the amount of $640,000, for supplying funds upon security secondary to any first mortgage, had been obtained and there were other funds available to the Hotel Company; a responsible stock brokerage house was to be engaged to sell

$1,250,000 of stock that was being underwritten. The defendant Moore checked up and approved the plan of secondary financing, saying he thought it would be a great success and that he was satisfied with it. In August, 1922, he caused the first underwriting contract hereinbefore mentioned to be executed by the defendant corporation, whereby upon certain conditions it accepted employment by the Hotel Company to dispose of its bonds aggregating $3,200,-000 and to be secured by a first mortgage on the proposed hotel property. The president and the general manager of the Longacre Company, after examining the plaintiff's contract and the plans, satisfied themselves that the building could be built and paid for with a smaller first mortgage than that for which Grabow had planned. Moore testified that at some time after this underwriting agreement was executed he became dissatisfied with the management of the Hotel Company and would have nothing more to do with its president and those who were then in control of it.

The title to the real estate on which the building was to be erected was taken January 9, 1923, and was paid for in part with money advanced by the defendant corporation under its new contract with the Hotel Company for the sale of bonds dated November 10, 1922. The Longacre Company started to erect the building in February, 1923, and all work stopped late in March of that year.

The jury were instructed, in substance, that the plaintiff could recover only nominal damages for wrongful interference with the contract unless substantial damages were proved with reasonable certainty, and that there could be no recovery for speculative or conjectural profits. They were told that if they could not with reasonable certainty determine how much of the builder's fee stipulated for in the contract the plaintiff would have received, only nominal damages could be recovered. The judge in stating the law as to recovery of prospective profits substantially followed what has been said in *John Hetherington & Sons, Ltd.* v. *William Firth Co., supra, Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 379, 380, 382, *Neal* v. *Jefferson*, 212 Mass. 517, *Burnham* v. *Dowd*, 217 Mass. 351, 360, *Orbach* v. *Para-*

*mount Picture Corp.* 233 Mass. 281, *F. E. Atteaux & Co. Inc.* v. *Mechling Brothers Manuf. Co.* 245 Mass. 483, 498, *Taxi Service Co.* v. *Gulf Refining Co.* 252 Mass. 314, 323, and *Whitcomb* v. *Reed-Prentice Co.* 262 Mass. 348, 360. The fact that there is an element of uncertainty in the assessment of damages is not a bar to their recovery. *Cutter* v. *Gillette*, 163 Mass. 95. It has not been contended that the plaintiff was not in financial condition to carry out its part of the contract. There was evidence that it stood ready to furnish a bond in the sum of $1,000,000 to secure the fulfilment of it.

The evidence showing that the hotel was not completed by the Longacre Company, that several actions were brought against the Hotel Company, and that the defendant corporation after paying $200,000 under its new bonding contract foreclosed its mortgage because of the failure of the Hotel Company to meet its obligations, was strong evidence tending to prove that the Hotel Company would not have been able to fulfil its obligations under the building contract with the plaintiff; but we cannot say that it was conclusive. The jury could have found that the financial aid promised for putting the project through under earlier management was largely lost when the officers were changed and the contract was made with the Longacre Company. It also appeared that while the new financing was in progress there were transactions in connection with it which led to complaints in the criminal court. The president then in office gave this as the reason why the Hotel Company became unable to raise further money to finance the enterprise. The jury may have found that changes in the situation after Grabow was eliminated and the plaintiff's contract broken were the cause of this failure rather than any unsoundness of the plan of financing upon which the Hotel Company had placed reliance to carry out its contract with the plaintiff.

Proof that one of the three options of the Hotel Company on real estate was not in force when the plaintiff's contract was broken, that the Hotel Company then had no physical property or money, that the first contract with the defendant company had been terminated, and that the Hotel Company

received no money from the sale of its preferred stock, does not require a different conclusion. The question whether upon all the evidence the plaintiff had proved substantial damages was one for the jury to decide. The case is distinguishable in its facts from *New England Iron Works Co.* v. *Jacot, supra.*

3. We have examined the defendants' exceptions to the rulings on the admission and exclusion of evidence, in so far as they have been argued, and in those rulings no reversible error appears.

4. The defendants asked in several requests for rulings that the jury be instructed that the defendants had a right to refuse to undertake to raise money for the Hotel Company, to refuse to be a party to any project for financing the building contemplated, and to refuse from any motive to deal with the Hotel Company even if, as an incidental result of such refusal, that company broke its contract with the plaintiff. The judge in giving each of these and several somewhat similar requests qualified them by adding "unless the defendant in making such refusal had in mind the bringing about of a breach by The Chatham, Inc., of its contract with the plaintiff," or by adding other words of like import. The effect of the qualifying words was to give the jury to understand that if the defendants' motive in refusing to enter into contractual relations with the Hotel Company was to bring about a breach of the contract of that company with the plaintiff, such refusal would afford ground for liability.

A party not under contract with another has a right to refuse to enter into contractual relations with him, no matter what his motive for such refusal may be. "Every man has a right to determine what branch of business he will pursue, and to make his own contracts with whom he pleases and on the best terms he can . . . . He may refuse to deal with any man or class of men." *Carew* v. *Rutherford,* 106 Mass. 1, 14. *Commonwealth* v. *Hunt,* 4 Met. 111, 133. *Winchester* v. *Howard,* 97 Mass. 303, 305. *Heywood* v. *Tillson,* 75 Maine, 225. *McMaster* v. *Ford Motor Co.* 122 S. C. 244. "It is the right, 'long-recognized', of a trader engaged in an entirely private business, 'freely to exercise his own independent dis-

556    H. D. WATTS CO. v. AMERICAN BOND & M'TG'GE CO.    [267

cretion as to parties with whom he will deal.'" *Federal Trade Commission* v. *Raymond Bros.-Clark Co.* 263 U. S. 565, 573. If the defendants went no further than merely to refuse to contract with the Hotel Company, the motive for such refusal is immaterial. They were not required to submit their reasons to a court or jury. *Winchester* v. *Howard, supra. Pickett* v. *Walsh,* 192 Mass. 572, 582. *Allen* v. *Flood,* [1898] A. C. 1, 165. *Quinn* v. *Leathem,* [1901] A. C. 495, 508. *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.* 107 Md. 556, 567. *Heywood* v. *Tillson, supra. Boggs* v. *Duncan-Schell Furniture Co.* 163 Iowa, 106.

It is evident from the foregoing authorities that the qualifying words appended by the trial judge to the defendants' requests, interpreted as they must be to mean that the unexpressed motive of the defendants in refusing to enter into a second underwriting agreement with the Hotel Company might afford a ground for holding the defendants liable, were erroneous. After repeating these qualifying words several times the judge, in later instructions, stated to the jury in substance that if the defendants simply refused to finance, or assist in financing, the building project, but did nothing in the way of active solicitation or persuasion for the purpose of procuring the Hotel Company to break its contract with the plaintiff, the defendants would not be liable; that the plaintiff had the burden of proving the defendants guilty of active solicitation or persuasion calculated or intended to cause the Hotel Company to break its contract with the plaintiff; and that the plaintiff must prove that the defendants directly undertook to procure a breach of the contract and that it was not enough that such breach was brought about incidentally as the result of conduct of the defendants which was otherwise lawful.

In none of these later portions of the charge was the error which appeared in the qualifying words, to the effect that in the exercise of an absolute right unexpressed motive alone may make a party liable, specifically corrected, and it is impossible to know whether the jury based their verdict on the erroneous instructions referred to or on the more accurate statements of law which were thereafter given.

Because the requests referred to were material to the issue and related to rights which might be exercised by the defendants without liability even if by their exercise a breach of contract was incidentally caused, they should have been given in terms or substance without the qualifying limitation. The refusal so to give them was reversible error.

*Exceptions sustained.*