Riley, J.
The plaintiff in this case brought an action on a promissory note upon which liability was not contested by the defendant and the trial Judge made a finding for the plaintiff in the amount of the note with interest thereon in the sum of $720.30. However, the defendant filed a declaration in set-off in three counts alleging therein a breach of three separate written contracts entered into between the parties to this suit and upon this declaration in set-off the trial Judge made a general finding for the defendant in the amount of $400.00. The following facts and evidence may be deduced from the report.
The plaintiff was a poultry dealer engaged in the business of raising, buying and selling poultry. The defendant since the spring of 1941 had been in the business of *57 raising and selling chickens and producing eggs for market, and in January 1942 had on hand several chickens which were left over from those raised by him during the 1941 season and were ready for market and also had between 460-475 laying hens which wrere producing eggs at a net profit. During 1941 the plaintiff sold the defendant several thousand young chicks and furnished the defendant money or credit to obtain grain for feeding them during their first four months.
The three contracts upon which the defendant’s claim for damages is based were dated January 23, 1942, April 17, 1942 and May 1, 1942 respectively and were for the sale by the plaintiff to the defendant of baby chicks, so called. The contracts were of the type known as conditional sale contracts, by the terms of which title to the property remained in the plaintiff-vendor until the price was paid in full. As a part of each transaction the plaintiff agreed to furnish money up to a certain amount to provide the necessary grain requirements for these chicks from time to time, as the defendant requested it.
Upon the execution of the first contract the defendant gave the plaintiff a promissory note covering the cost of the chicks and the money which the plaintiff was to advance for the purpose of buying grain to raise the chicks. Upon the execution of the latter two contracts a separate note was issued in each instance; one note covering the purchase price of the chicks and the other note covering the amount of the money to be advanced for the purchase of grain.
The total number of chicks purchased by the plaintiff from the defendant under these contracts was over 6,000, purchase price for them was $1056.00 and the total amount of money to be furnished for grain was $2560.00'. Of this latter amount the plaintiff gave to the defendant only the sum of $150.00 and that payment was made in the month of *58 May 1942. On June 1, 1942 the plaintiff wrote to the defendant and refused to advance further money for the purchase of grain and shortly thereafter returned to the defendant the notes which the latter had executed covering the amounts to be advanced by the plaintiff for the purchase of grain.
The defendant then had on hand 459 of his old laying hens which he did not want to sell. The plaintiff, failing to furnish the money for the grain requirements which he had agreed to furnish, in order to raise money for such purpose the defendant thereupon, on or about June third, sold 400 of these laying hens for about $450.00. He testified that he had exhausted all other means of raising money to feed the growing chickens. The laying hens aggregated about two thousand pounds and the market price at that time was twenty-two cents a pound. He did not intend to sell these hens until October, at which time egg production would fall off materially. The defendant kept fifty-nine of these laying hens. In October when he intended to sell the laying hens the market price per pound was twenty-five cents (25^). He therefore claimed damages in the sum of $60.00, this being'the loss suffered by him as a result of selling the hens in June. The fifty-nine hens which the defendant kept continued to lay during June, July, August and September, but as a result of selling the 400 hens, the defendant lost the bulk of the profits of this egg business during the four months following June third. He had a convenient market at the Mount Hermon School nearby and his figures from January until June third showed that he received each week from the sale of eggs about $58.00. He also testified that the cost of feeding the hens during this period was $20.00 per week.
The defendant paid the balance of the January twenty-third note when it became due on June twenty-third, having *59 been renewed for one month, and the plaintiff gave the defendant proper credit for that part of the note which represented grain requirements. The plaintiff returned to the defendant the other two grain requirement notes and the defendant paid the April seventeenth note given for the purchase price of the chickens when it became due in August, and paid the $330.00 note dated May first when it became due on September first.
In the meantime the note upon which suit is based had become due on June twenty-seventh but the plaintiff did not bring suit upon this note until all of the other notes had been paid. On 'September first, however, the same day that the $330.00 note dated May first was paid, the plaintiff caused the present suit to be brought and caused an attachment to be placed upon all of the chickens and hens owned by the defendant.
The plaintiff objected to and duly claimed a report to the evidence introduced by the defendant, namely: — that the four hundred laying hens which were sold by the defendant on June third weighed about five pounds each and that they brought twenty-two cents per pound, that normally the defendant would not have sold them until October and did not intend to sell them until October; that the market price in October was twenty-five cents per pound; that his flock of four hundred fifty-nine laying hens had been producing eggs for him from January to June, 1942; that he had been marketing those eggs and had received an average of $58.00 per week during that period from ,the sale of such eggs; and that the cost of feeding the hens during that period was approximately $20.00 per week..
There was no other evidence as to the defendant’s damage, save that the defendant testified that after he had sold his laying hens and used the proceeds thereof, the Greenfield Farmers Exchange offered to furnish him credit for *60 the purchase of the necessary grain when the defendant called its attention to the fact that the plaintiff had refused to furnish that credit. At the close of the trial and before final arguments, the plaintiff made the following written requests for rulings:
1. Any damages for breach of a contract to loan money are merely nominal. 2. Any damages claimed because of being forced to sell chickens would be too remote, speculative or conjectural. 3. That the only measure of damages for breach of a contract to loan money is the reasonable cost of securing another loan elsewhere. 4. The fact, if it be a fact, that Raymond sold four hundred hens, being other property of his, and took a loss on that sale, is no evidence of damage in this case. 5. The loss of profit from eggs, which Raymond might have received, is not an item of damage herein. 6. There can be no recovery in this case, because of the loss by Raymond in the sale of hens, or loss of egg profits.
The Court denied each of the plaintiffs’ requests for rulings. The report presents the questions as to whether the Judge’s rulings and his refusal to grant these requests were correct. It has been generally held that even upon a contract to furnish money a party may recover the actual damage he has suffered by breach of the contract, provided it is not too remote or speculative and can be said to have been reasonably within the contemplation of the parties, particularly if such damage has-been specially pleaded. In the present case the special damage relied upon was fully set out in the defendant’s declaration in set-off. Restatement of the Law Contracts, Sec. 343. See cases collected in 36 A. L. R. 1426, N, 44, A. L. R. 1486, also N. E. Iron Works v. Jacot, 223 Mass. 216.
Accordingly there was no error in the denial of the plaintiff’s first and third requests. The second request might well have been denied as inapplicable upon the evidence *61 as it was the sale of hens and not chickens upon which the defendant’s claim for damages was based. The 4th, 5th and 6th requests and the evidence relating thereto admitted against the plaintiff’s objection and claims of report and upon which the Judge’s finding was obviously based raise questions that are troublesome to apply to generally accepted rules of law respecting damages. The difficulty is enhanced by a feeling of sympathy for the defendant, who has been compelled to perform his part of the three contracts by the plaintiff, notwithstanding that the latter had not fulfilled his obligations thereunder. In this connection it has not been argued that the defendant waived the plaintiff’s breach by the payment of the respective notes or by other acts. See Reid v. Doherty, 273 Mass. 388.
The general principles which we think are applicable to this case on the pleadings are set out as follows in Hetherington & Sons v. William Firth Company, 210 Mass. 8 at 21, 22.
‘ ‘ The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts. Leavitt v. Fiberloid Co., 196 Mass. 440, 446. Wertheim v. Chicoutimi Pulp Co., (1911) A. C. 301, 307. When a claim for prospective profits is brought to the test of this principle, recovery can be had where loss of profits is the proximate result of the breach, and is such as in the common course of events reasonably might have been expected, at the time the contract was made, to ensue from a breach, and where it can be determined as a practical matter with a fair degree of certainty what the profits would have been. But profits cannot be recovered, when the contract in *62 terpreted in the light of all its surroundings does not appear to have been made in contemplation of such damages, or when they are remote, or so uncertain, contingent, or speculative as not to be susceptible of trustworthy proof. ”
The uncertain or remote nature of the defendant’s damages may seem to be taken care of by the definiteness of the evidence as to figures and prices and the fact that the transactions by which the defendant claims to be damaged were completely consummated at the time of the trial. However, we feel there are two considerations which operate to prevent the defendant from recovering the damage sought in this case. First: — we do not think it could or should have been reasonably within the contemplation of the parties that the defendant would be obliged to sell at a loss other property of his to procure the money which the plaintiff withheld from him in violation of his contract. The principle would be the same whether it was his cattle, swine or other profit producing property that was sacrificed. The fact that the loss came from the forced sale of hens is not controlling because it is to be borne in mind that the plaintiff was to furnish the money for the specific purpose of providing grain for the baby chicks sold to him by the defendant and not for the hens or the defendant’s general poultry business. If the money was to be furnished for the defendant’s general poultry business, we would be inclined to the opinion he might recover damages of the character claimed in this case. The second consideration, which is perhaps covered generally by the first, is that the damage claimed arises out of other contracts or transactions than the ones broken by the plaintiff and therefore cannot be recovered. The reason for these rules has been set out long since Squire v. Western Union Telegraph Company, 98 Mass. 232 at 237, 238 where it is said, “ A party who has failed to fulfill a contract cannot be held liable for remote, *63 contingent and uncertain consequences, or for speculative or possible results which may have ensued on his breach of duty, although they may be traceable to that cause. The reason is, that damages of such a nature are not the natural or necessary incidents of a contract, and cannot be deemed to have been within the contemplation of parties when they agreed together. A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty would be a serious hindrance to the operations of commerce and to the transaction of the common business of life." The effect would often be to impose a liability wholly disproportionate to the nature of the service which a party had bound himself to perform and to the compensation paid and received therefor. The practical rule, founded on a wise policy, and at the same time consistent with the good sense and sound equity, is that a party can be held liable for breach of a contract only for such damages as are the natural or necessary, and the immediate and direct results of the breach, — such as might properly be deemed to have been in contemplation of the parties when the contract was entered into, — and that all remote, speculative and uncertain results, as well as possible profits and advantages and other like consequences which might have arisen from the fulfillment of the contract must be excluded, as forming no just or legitimate basis on which to determine the extent of the injury actually caused by a breach. Fox v. Harding, 7 Cush. 516. Cutting v. Grand Trunk, Railway Co., 13 Allen 381-384, and cases cited.”
And in Fox v. Harding, 7 Cushing 516 at 522, where the Court says,
“If the profits are such as would have accrued and grown out of the contract itself, as the direct and imme *64 diate results of its fulfilment, then they would form a just and proper item of damages to be recovered against the delinquent party upon a breach of the agreement. These are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into. But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.”
While there has been a tendency to liberalize the interpretation of these principles in recent years, the principles remain the same although Courts do not always agree in their application to a certain set of facts. No case has been called to our attention in which the facts closely resemble those in the case at Bar. See, N. E. Iron Works v. Jocot, 223 Mass. 216, Curtis v. Boston Ice Co., 237 Mass. 243, Laline & Partridge v. Hobbs, 255 Mass. 189, Narragansett Co. v. Riverside Park Co., 260 Mass. 265.
We feel that the rules above pronounced by our Court require us to hold that the evidence introduced over the plaintiff’s objection was improperly admitted and that the 4th, 5th and 6th requests were improperly denied. However, the defendant was entitled to recover nominal damages for the breach of the three contracts and possibly some other expenses of attempting to secure the money which seems to be hinted at but not set out in the report. See Derrig v. Dyer, 216 Mass. 164, Wheeler v. Balestri, 304 Mass. 257 at 259.
Accordingly there must be a new trial in the case, but such trial is to be limited solely to damages in the defendant’s declaration in set-off.