[No. 32945. Department Two. November 26, 1954.]

KENNETH G. HEIN, *Appellant*, v. CHRYSLER CORPORATION *et al.*, *Respondents.*[1]

[1]Reported in 277 P. (2d) 708.

*Peyser, Cartano, Botzer & Chapman* and *Robert A. O'Neill,* for appellant.

*Bogle, Bogle & Gates* and *Orlo B. Kellogg,* for respondents.

DONWORTH, J.—Plaintiff, a former retail dealer in automobiles manufactured by defendant Chrysler Corporation, brought this action to recover in tort for the allegedly malicious interference by defendants with plaintiff's business.

Prior to the trial of this action, plaintiff had obtained a judgment in the Federal court at Seattle in the amount of $31,675.43 against defendant Chrysler Corporation in an action denominated by plaintiff as a "breach of contract" suit. In that suit, Chrysler Corporation was the sole defendant.

In the present action, there were named as defendants Chrysler Corporation, DeSoto Motor Corporation (the agent of Chrysler in marketing automobiles through dealers), and E. E. Harrison (northwest regional manager of DeSoto Motor Corporation) and his wife.

Plaintiff's complaint alleged facts which he contended amounted to malicious interference with his business by defendants and prayed for damages of sixty-seven thousand dollars. Every item of damage which plaintiff sought to recover was based upon the premise that defendant Chrysler Corporation was obligated by contract to deliver to plaintiff forty-five more motor vehicles than Chrysler did deliver to him during the fourteen-month period ending February 28, 1951.

During the trial of the case before a jury, plaintiff voluntarily moved to dismiss the suit as to Harrison and wife, and they were accordingly dismissed as defendants. At the conclusion of the plaintiff's case, the two remaining defendants challenged the sufficiency of the evidence to sustain a verdict against either of them and moved to dismiss the action. The motion was granted, and a judgment of dismissal was entered.

On this appeal, plaintiff makes three assignments of error, which jointly raise the single issue of whether there was sufficient evidence at the close of plaintiff's case to take the case to the jury.

Since this is an appeal from a judgment of dismissal entered upon sustaining a challenge to the sufficiency of the plaintiff's evidence in a jury case, we must, for the purpose of this appeal, accept all appellant's evidence as true and give him the most favorable inferences which can be drawn therefrom. *Gray v. Department of Labor & Industries,* 43 Wn. (2d) 578, 262 P. (2d) 533.

The material facts, so treated, may be summarized thus:

Respondent Chrysler Corporation, hereafter called Chrysler, is the manufacturer of DeSoto and Plymouth cars. Respondent DeSoto Motor Corporation, hereafter referred to as DeSoto, is a subsidiary of Chrysler engaged in sales pro-

motion and, in an advisory capacity, in the distribution of DeSoto and Plymouth cars. Chrysler distributes its new cars throughout the United States through certain designated retail dealers (called direct dealers), each of whom has a specified territory assigned to him, either on an exclusive or nonexclusive basis.

In January, 1945, appellant entered into a written contract with Chrysler under which appellant became a direct dealer of Chrysler, as an independent contractor and not as an agent. The terms of the contract between appellant and Chrysler were embodied in two documents, one entitled Agreement Between DeSoto Direct · Dealer and Chrysler Corporation DeSoto Division, and the other, Chrysler Corporation DeSoto Direct Dealer Terms of Purchase. Both agreements were executed upon forms prepared by Chrysler. At the times material to this controversy, appellant had the exclusive right to sell DeSoto cars in Whatcom county and a nonexclusive right to sell Plymouth cars therein.

The parties have debated at length in their briefs the issue of whether the contract between appellant and Chrysler was a binding one, and especially whether it bound Chrysler to deliver any determinable number of automobiles to appellant. We will not consider that issue on this appeal, because we agree with appellant that the result must be the same here whether the contract is a binding one or not, inasmuch as this case is framed to sound in tort and not in contract. For the purpose of this appeal, we will assume, without deciding, that Chrysler was obligated to deliver to appellant forty-five more motor vehicles than he received during the fourteen-month period here involved.

When the contract was executed in January, 1945, Chrysler was manufacturing no cars because World War II was in progress. In reliance on the contract, appellant leased a building in Bellingham and equipped it to carry on the business of selling and servicing new and used cars in Whatcom county. When the war ended, Chrysler began to manufacture cars and to ship them to its dealers, including appellant. From 1946 through 1949, there was no difficulty between

appellant and either Chrysler or DeSoto. Appellant (and all other direct dealers) could easily sell all new cars he could get from Chrysler, because the pent-up demand for new cars created an unprecedented "seller's market."

To try to satisfy all of its dealers, all of whom wanted more cars, Chrysler put into effect a quota system of allocating cars to its dealers, under which each dealer was supposed to get his "fair share" of the new cars manufactured by Chrysler. Under this system, appellant received approximately nine-tenths of one per cent of the cars allocated by Chrysler to the northwest region during the years from 1946 through 1949. In 1950, and during the first two months of 1951, the number of cars delivered to appellant by Chrysler was cut approximately forty per cent. Appellant testified he was never informed by respondents and never learned (until after he sold his business) what percentage of cars shipped to the northwest region was allocated to him.

Appellant called as a witness Kenneth B. Watts, who had been a district manager for Chrysler from 1946 through 1952, at which time he was discharged by E. E. Harrison, the northwest regional manager of DeSoto, hereafter called Harrison. Watts testified that he worked directly under Harrison and had charge of the district in which appellant's dealership was located. Watts said that in 1950 Harrison decided to get rid of appellant as a direct dealer and to take over his business by placing Harrison's son-in-law in charge of the Bellingham dealership after forcing appellant to quit or sell out. Appellant was at all times one of the ten best dealers handling Plymouth and DeSoto cars in the northwest region, and Harrison had no just reason to try to get rid of him, according to Watts' testimony.

In pursuance of his plan to force appellant to sell out his business, Harrison told Watts to "build up a case" against appellant by sending in to Chrysler false and misleading reports which were derogatory concerning appellant's operation of his dealership. Pursuant to these instructions, Watts sent in a series of reports to Chrysler indicating that

appellant was neglecting his business, was "hoarding" new cars and refusing to sell them to prospective customers, and was thinking of selling out his dealership.

Watts also testified that he was instructed by Harrison to force appellant (and apparently all other dealers for Chrysler) to buy whatever sales aids Chrysler wished to sell its dealers by warning appellant that he would not get a fair share of new cars to sell unless he allowed Chrysler to dictate how his business should be run. As examples of such conduct, Watts testified that he used such compulsion to force appellant to buy service mailing cards, an Ad-matic projector, a neon picture, an animated motor stand, special tools, special advertising, and expensive models of cars, all of which appellant did not want but was forced to buy to make sure that he would get his share of desirable new cars to sell. In addition, Watts said that he forced appellant to hire two additional salesmen whom he did not need.

On cross-examniation, both Watts and appellant conceded that appellant had always purchased without serious protest whatever sales aids Watts had advised him to buy, and that appellant and Watts had always parted as friends after such sales.

Watts testified that Harrison's plot to have his son-in-law take over appellant's dealership failed when Chrysler issued orders to all of its employees (apparently late in 1950) that no employee would be allowed to purchase or take over the business of a dealer in case of a forced liquidation. Thereafter, two men not connected in any way with Harrison formed a partnership and purchased appellant's business for approximately thirty-two thousand dollars. The purchase agreement recited that the good will of the business was valued in the sale at one dollar.

Appellant, in support of his claim for damages suffered as a result of the alleged tortious conduct of respondents Chrysler and DeSoto, presented testimony showing that, *if he had received the forty-five additional new cars he claimed were due him as his fair share of the cars manufactured by*

*Chrysler,* he would have made an additional profit (before selling his dealership) as follows:

$18,563.98......Sale of new cars
2,364.07......Sale of used cars turned in on new cars
4,011.30......Extra income servicing cars
2,693.25......Extra insurance and interest

$27,632.60......Total loss of profits

In addition, appellant presented testimony that the good will value of his business, before respondents forced him to sell by cutting off his fair share of the supply of cars coming into the region, was forty thousand dollars.

Appellant testified that he decided to sell his business in October, 1950, when he learned that three cars which he had been advised were to be shipped to him under respondent Chrysler's "fair share" distribution plan had been "diverted" to other dealers in the northwest region on orders from Harrison. Appellant described the incident which caused him to decide to sell out thus:

". . . when they [Chrysler] decide to ship you cars they send out a shipping order. It tells on there what model it is, DeSoto club coupe, and the color and the equipment that is on it; and we receive those. I had received three shipping orders. They were sending up three DeSotos in a carload on it. I received those three shipping orders. Some time went by and I didn't receive the invoice and the bill of lading. I began to wonder when these cars were coming. I had two of them I think I had people waiting for, and so I did something that I guess I hadn't done before. I called Los Angeles and asked when these cars were being shipped.

"I got ahold first of Mr. Roy Matzinger, who was the director of distribution. He said, 'Just a minute. I will transfer you to the man who handles the account.' He put me on to Jack Welch. He said, 'Those cars have been diverted.' I said, 'What do you mean?' He said, 'They have been shipped to another dealer.' I said, 'How can you do that?' He said, 'Well, we received orders from Mr. Harrison to ship them elsewhere.' I said, 'Well, how long has this been going on? Has this gone on before?' He said, 'Yes.'

"So I went to the telephone and I called the regional office and asked for Mr. Harrison. He was out, but Mr. Watts was there and I talked to him. This was subsequent to this Sep-

tember 20 meeting when they had been up to my place. I said, 'Ken, my cars have been diverted.' And I said, 'This is not the first time. You told me I was going to receive my automobiles, and now I discover they have been diverted.' I said, 'If that's the way that you fellows want to do, maybe the next time you find somebody with money enough to buy a deal you had better bring him up.' I was angry and made the remark in anger, and that was the end of that conversation.

"The very next day I had a letter on my desk from Mr. Harrison. He had snapped at the offer to sell."

In the letter referred to by appellant in the foregoing testimony, Harrison asked appellant to write him (Harrison) a letter saying that he wished to sell out, giving his reasons for wanting to sell. Appellant said he was surprised to find that Harrison seemed to be so eager for him to sell out.

Appellant further testified:

"I thought about that letter for three days. Then I called Mr. Harrison on the telephone and told him if that was the way things were going to be he might just as well sell me out, I could no longer continue in business not knowing whether I was going to get any cars or some cars or a lot of cars. You can't operate a dealership with no cars one month, some cars the next month,—"

From that time on, appellant never changed his mind about having to sell out.

Concerning the meeting of September 20, 1950 (referred to in appellant's testimony quoted above), when Harrison and Watts came to Bellingham and talked to appellant, he testified that Harrison was "belligerent," threatened to ship him different models of cars than he ordered, or ship him cars at off seasons or "get onery about your facilities." Appellant also said that at the same meeting Harrison accused him of dishonestly having and using two different financial statements, which appellant had not done. Appellant said that he did not know it at that time but that he discovered later that Harrison had already been diverting cars from him before the meeting of September 20, 1950.

During the course of the trial, appellant filed in this action a judicial admission in this language:

"Plaintiff in open court hereby admits that any sums actually paid to him upon that certain judgment in Federal Court, Cause No. 3390, (Hein v. Chrysler Corporation) will be applied as a reduction of any judgment, if any, obtained in the above entitled action."

Appellant also filed a supplemental request for a judicial admission by respondents as to the accuracy and authenticity of instructions to the jury (attached to the request for judicial admission) given by the Federal court in Hein v. Chrysler Corporation, cause No. 3390. These instructions were filed in this case for the purpose of proving that the Federal court had instructed the jury that:

"This is a civil case, and the basis of it is alleged breach of contract in the particulars previously mentioned."

Reference to the instructions shows that the "particulars previously mentioned" were that Chrysler had failed to supply to plaintiff (appellant here) with forty-one cars which Chrysler was allegedly obligated to deliver to plaintiff as his "fair share" of cars manufactured by Chrysler and shipped into the northwest region. Despite the fact that the Federal court instructions say that Chrysler failed to deliver forty-one cars (instead of forty-five as claimed here), the instructions informed the jury that plaintiff was seeking in that case exactly the same sums as damages for loss of profits as are sought here, totaling $27,632.60.

In addition, the Federal court jury was instructed that the plaintiff (appellant here) was seeking:

"$40,000.00 for *loss of good will sustained in the sale of plaintiff's business made necessary by business compulsion and gradual strangulation of plaintiff's business resulting from the alleged breach of the contract by defendant* [Chrysler.]" (Italics ours.)

The total amount of damages sought in the Federal court case was $67,632.60, composed of $27,632.60 for loss of profits and $40,000.00 for destruction of good will. Exactly the same amount is prayed for in this action and for the identical items of damage.

On the basis of the evidence presented by appellant, the trial court dismissed the action at the close of appellant's case, holding that the evidence was insufficient to go to the jury because (1) as to Chrysler, no tort had been committed, even assuming there was a breach of contract, and (2) as to DeSoto, Harrison's acts and Watts' acts were clearly outside the scope of their employment and were acts of utter disloyalty to their employer, for which DeSoto could not be held liable. Later, the court denied appellant's motion for a new trial, giving as its reasons for doing so that Chrysler neither breached its contract with appellant nor committed a tort by failure to furnish additional autos to appellant, and that respondent DeSoto did not induce any breach of contract nor commit any tort.

Appellant strongly contends on this appeal that the trial court misconceived the nature of this action, which appellant insists is for malicious interference with appellant's business and not for inducing a breach of appellant's contractual relations with Chrysler, as the trial court concluded in its oral opinion on granting the motion to dismiss. We agree with the trial court, however, that the true gist of the action is for inducing a breach of appellant's contractual relations with Chrysler.

It is true that appellant offered testimony to the effect that respondents "interfered" with his business by forcing him to buy sales aids, tools, and other things which he did not wish to purchase. But appellant claims not one cent of damages as a result of such allegedly tortious conduct. Every item of damages appellant seeks arises from the alleged breach of contract by reason of Chrysler's failure to deliver forty-five additional new cars to appellant.

■ The true nature of a cause of action stated in a complaint must be determined by its allegations and the evidence offered in support of its prayer for relief, and not by the pleader's conclusions as to its nature nor the label he places upon it. *Mueller v. Winston Bros. Co.*, 165 Wash. 130, 4 P. (2d) 854; *Yeager v. Dunnavan*, 26 Wn. (2d) 559, 174 P. (2d) 755.

In the case at bar, appellant attempted to allege and prove a cause of action for malicious interference with his business, but the most he succeeded in doing was to allege, and offer testimony to prove, that respondents maliciously induced a breach of his contractual relations with Chrysler. For instance, appellant alleged, and offered testimony to prove, that respondents interfered with his business by forcing him to buy sales aids which he did not need, and by forcing him to hire salesmen whom he did not need. But appellant sought no damages whatsoever for those specific acts of interference with his business.

Since the true nature of his action is for malicious inducement of a breach of his contractual relations with Chrysler, appellant cannot recover from Chrysler because Chrysler is a party to the contract and cannot be held liable for inducing itself to breach its own contract. The tort of malicious interference with contractual relations by inducing a breach of contract is a remedy created by the common law to compensate one whose contractual relations with others is interfered with *by a third party. Doremus v. Hennessy,* 176 Ill. 608, 52 N. E. 924, 54 N. E. 524; *Canister Co. v. National Can Corp.,* 96 Fed. Supp. 273. In the latter case, the court commented that, under New York law,

"  .  .  .  an action for inducing a breach of contract will lie against a third party but a party to the contract itself cannot be held responsible [in tort] for inducing himself to commit a breach of that contract or for conspiring to breach it." *Canister Co. v. National Can Corp., supra.*

See, also, *Smyth Sales v. Petroleum Heat & Power Co.,* 128 F. (2d) 697; *United States v. Newbury Mfg. Co.,* 36 Fed. Supp. 602; *Osgoodby v. Talmadge,* 45 F. (2d) 696.

Many other cases can be cited in which *a third party* has been held liable for inducing a breach of contract between others. Some of the cases so holding are: *Hornstein v. Podwitz,* 254 N. Y. 443, 173 N. E. 674, 84 A. L. R. 1; *Watts Co. v. American Bond & Mortgage Co.,* 267 Mass. 541, 166 N. E. 713, 84 A. L. R. 12; *Husting Co. v. Coca Cola Co.,* 205 Wis. 356, 237 N. W. 85, 238 N. W. 626, 84 A. L. R. 22. In 84

A. L. R., pages 55 through 58, the annotator lists cases from the United States courts and from the appellate courts of thirty-one states in which *third parties* have been proceeded against for procuring a breach of a contract currently existing *between other parties*. No Washington cases are cited.

In opposition to the many cases which allow recovery for procuring or inducing a breach of contract only when the breach was induced *by a third party,* appellant cites *Sorenson v. Chevrolet Motor Co.,* 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35. If that case can be considered as holding that a party to a contract can be guilty of the tort of inducing himself to breach a contract to which he is a party, we decline to follow it. However, it seems to us that the decision is based on the allegation (admitted by the demurrer) that Chevrolet *by its acts* enabled a third party (also a defendant) to appropriate the plaintiff's business. Furthermore, it should be noted that in the *Sorenson* case the plaintiff had not previously recovered judgment in a breach of contract action for the same injury flowing from the same act, as appellant has done here. A careful study of both the majority opinion and the dissenting opinion in the *Sorenson* case discloses that the issue here raised (namely, whether a party to a contract can be held liable in tort for inducing himself to breach the contract) was never raised in that case. Consequently, the decision does not support appellant's position in the case at bar, since the Minnesota court did not pass upon the question at issue here.

Appellant has cited no case which is a direct precedent for the type of action he is attempting to maintain here after a prior recovery in a breach of contract action.

■■ We must hold that appellant cannot recover in tort against Chrysler for two reasons: (1) Chrysler is not a *third party* but is one of the two parties to the contract, the breach of which it is charged with inducing, and hence cannot be liable for inducing itself to breach the contract, and (2) an injured party in the position of appellant (assuming that the contract did bind Chrysler to deliver the forty-five cars) is entitled to recover in his breach of contract action

all of the damages which normally and naturally can be expected to flow from such breach. *Rathke v. Roberts,* 33 Wn. (2d) 858, 207 P. (2d) 716; *Miller v. Robertson,* 266 U. S. 243, 69 L. Ed. 265, 45 S. Ct. 73. Where the breach of contract must necessarily cause damage to, or the destruction of, the business of the other contracting party (as is the situation here), the damages for such harm to, or destruction of, his business may be fully recovered by the injured party in his breach of contract action.

The record in this case shows that just that has happened here. Appellant filed in this action a request for a judicial admission as to the accuracy and authenticity of instructions given to the Federal court jury in his prior action against Chrysler. By filing such a request, appellant vouched for the authenticity of the instructions he brought here. From the Federal court instructions and from the pleadings and appellant's judicial admission, it is apparent that appellant recovered judgment in the Federal court in the action he calls the "breach of contract case" for the identical items of damage for which he seeks recovery here in a tort action.

By his judicial admission that he will apply any amounts received in payment of the Federal court judgment against Chrysler *pro tanto* in satisfaction of any judgment rendered in this case, appellant concedes that he is suing Chrysler twice for the same wrongful act. He asks, in effect, to be allowed to submit his claim for the identical items of damage to two juries on two different legal theories and to retain the benefit of the larger of the two judgments recovered in the two actions. Appellant cites no precedent (and we know of none) which would allow such a procedure.

Appellant urges, however, that even if he cannot recover from Chrysler, he can recover from DeSoto because DeSoto was not a party to the contract and, therefore, could be held for inducing Chrysler to breach its contract with appellant. Appellant's testimony strongly suggests that DeSoto was in reality the *alter ego* of Chrysler, and that Harrison acted for both the parent corporation, Chrysler, and

its subsidiary, DeSoto. But if it be assumed for the purpose of this appeal that appellant proved that the two corporations were completely separate and that Harrison, acting only for DeSoto, induced Chrysler to breach the contract, another insurmountable bar arises to prevent any recovery from DeSoto.

If the testimony of appellant's witness Watts is true, and we must so consider it on this appeal, Harrison deliberately set out to destroy appellant's business *for his own purposes,* though appellant was one of Chrysler's ten best dealers in the northwest. This fraud against Chrysler, which had as its purpose the depriving of Chrysler of one of its best dealers, was accomplished through DeSoto, the agent of Chrysler. Both Chrysler and DeSoto were victimized by what the trial court correctly characterized as "utterly disloyal conduct" on the part of Harrison and Watts, DeSoto's employees.

In such a situation, though Harrison and Watts might be liable individually in an action for maliciously inducing a breach of contract, DeSoto could not be held liable. The wrongful conduct attributed to Harrison and Watts by appellant's evidence could not bind their employer, DeSoto, because the two men were definitely serving their own ends and were willfully acting contrary to, and not in furtherance of, the best interests of their employer.

Though this court has never passed upon a factual situation similar to the one at bar, we have many times held in negligence cases and in willful assault cases that an employer will not be bound by the misconduct or the negligence of his employee when the employee is acting for purposes of his own and not in the furtherance of any legitimate interest of his employer. *Chase v. Knabel,* 46 Wash. 484, 90 Pac. 642; *Linck v. Matheson,* 63 Wash. 593, 116 Pac. 282; *Matsuda v. Hammond,* 77 Wash. 120, 137 Pac. 328; *Estes v. Brewster Cigar Co.,* 156 Wash. 465, 287 Pac. 36; *Westerland v. Argonaut Grill,* 185 Wash. 411, 55 P. (2d) 819; *Langness v. Ketonen,* 42 Wn. (2d) 394, 255 P. (2d) 551; *Barnett v. Inland Motor Freight,* 44 Wn. (2d) 619, 269 P. (2d) 592.

We outlined the basis on which the responsibility of the employer for the misconduct of his employee rests in *Westerland v. Argonaut Grill, supra,* in this language:

"One is responsible not only for his own acts, but for the acts of his employee when the acts are done in the scope of the employment and in furtherance of the business that is intrusted to the employee; and *so long as the thing the servant is doing is in furtherance of the master's business,* the master must answer for the unlawful manner in which the act is done." (Italics ours.)

■ It seems to us that the same rule must be applied here. An employee who willfully and for his own purposes violates the property rights of another ( by inducing a breach of contract, or in some other manner) is not acting in the furtherance of his employer's business. Consequently, his employer cannot be held liable under the doctrine of *respondeat superior* for the employee's wrongful act. The same rule should apply to any tort, regardless of its nature.

■ On the basis of the evidence produced by appellant in this case, the jury could not find that the conduct of Harrison and Watts was in the furtherance of DeSoto's business. Consequently, the court did not err in holding that DeSoto was not guilty of any tort against appellant.

As a further bar to the action against DeSoto, respondents contend that DeSoto cannot be held liable in any event because it was the agent of Chrysler, and, respondents assert, such an agent employed to advise his principal about his conduct of contract relations with others is either absolutely or qualifiedly privileged while acting in such agent-principal relationship. We do not find it necessary to pass upon this question because the facts here disclose that the tortious acts relied upon were the acts of Harrison and Watts individually, and were not attributable to DeSoto.

For the reasons heretofore given, we hold that the trial court did not err in sustaining the challenge to the sufficiency of appellant's evidence, in dismissing the action, or in denying appellant's motion for a new trial.

Consequently, the judgment appealed from is hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.

