[No. 1756-2.    Division Two.    January 19, 1977.]

JERRY O. HOUSER, *Respondent*, v. THE CITY OF REDMOND, *Appellant.*

*Richard J. Glein, Larry Linville,* and *Clinton, Fleck, Glein,* and *Brown,* for appellant.

*John P. Cogan,* for respondent.

PETRIE, C.J.—The defendant, City of Redmond, appeals from a judgment awarding plaintiff, Jerry Houser, damages for interference with his employment as a City of Redmond police officer.

Early in 1972, Sergeant Jerry Houser of the Redmond City Police Department concealed a tape recorder in his squad room locker and surreptitiously recorded the conversations of several fellow police officers. On April 26, 1972, Houser discovered that his locker had been broken into and his tape recorder rendered inoperable. He thereupon filed a written request for a formal police department investigation into the incident. Sergeant Sherman, as head of detec-

tives, was assigned to investigate with Detectives Crossland and Sheehan assisting.

On May 18, 1972, Sgt. Houser was dismissed from the Redmond police force for

> Recording private conversations of fellow police officers without their knowledge or consent by means of an electronic device in direct violation of RCW 9.73.030[1] on or about February 27, 1972, February 28, 1972, and on several previous occasions, within the Redmond Police Department Squad Room in the City Hall, Redmond, Washington.

Sergeant Houser sought review of his dismissal before the Civil Service Commission, and a hearing was conducted on June 13, 1972. He was represented by counsel at this open public hearing during which testimony, exhibits, and other evidence were submitted in support of, and in opposition to, the police action. Several police officers testified that they recognized their own voices on the tape which Houser had turned over to the investigating detectives and that the recordings were obtained without their knowledge or consent. In response to a question posed by Houser's attorney, Sgt. Sherman indicated that a complete investigation into the break-in of Houser's locker had been conducted but the identity of the culprit had not as yet been determined. On June 20, 1972, the Civil Service Commission issued a decision which upheld the discharge of Sgt. Houser. He then appealed that decision to King County Superior Court. The court affirmed the decision of the commission on December 28, 1972. No further appeal was taken from that order.

On March 19, 1973, Houser discovered that the perpetrators of his locker break-in were, in fact, the very same

---

[1]RCW 9.73.030 provides in part:

"Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, record or divulge any:

". . .

"(2) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation."

individuals who had been assigned to investigate the incident—Detectives Sherman, Crossland, and Sheehan. Based on this newly found evidence, Houser filed a motion to vacate the Superior Court judgment but withdrew the motion before formal action was taken upon it. He decided, instead, to pursue a different course of action and thus instituted the suit from whence this appeal follows.

The essence of plaintiff's complaint was the allegation that employees of the defendant, City of Redmond, tortiously interfered with his employment resulting in his discharge from the City of Redmond police force. More specifically, plaintiff claimed that the interference consisted of perjury and suppression of relevant evidence by other city employees, depriving him of a fair hearing before the Civil Service Commission.

Trial to a jury resulted in a verdict for Houser in the amount of $30,000. Post-trial motions were denied, and judgment was entered on January 14, 1975.

Although there are 23 assignments of error set forth in the City of Redmond's brief, our decision to reverse and remand for dismissal is based on the resolution of the following single issue: Whether an employee may subject his employer to liability for tortiously interfering with their employment relationship? Because the answer to that question is "No," plaintiff's complaint fails to state a cause of action.

█ The elements of the tort of malicious interference with contractual relations are set forth in the Restatement of Torts § 766, at 49 (1939):

> Except as stated in Section 698, [not relevant here] one who, without a privilege to do so, induces or otherwise purposely causes a *third person* not to
> (a) perform a contract with another, or
> (b) enter into or continue a business relation with another
> is liable to the other for the harm caused thereby.

(Italics ours.) The tort has its origin in the decision of *Lumley v. Gye*, 118 Eng. Rep. 749 (1853). In that case a competitor induced opera star Johanna Wagner to breach

her contract to perform for plaintiff. The court held that, as between the contracting parties, the contract itself provided a sufficient remedy. To compensate for the wrong done by the noncontracting party in inducing the breach of contract, however, the court held tort liability was in order. Hence, consistent with the reasoning behind the origin of this action, the law has developed that "[t]he defendant's breach of his own contract with the plaintiff is of course not a basis for the tort." W. Prosser, *Law of Torts* § 129, at 934 (4th ed. 1971).

Plaintiff contends, though, that Washington recognizes liability for tortious interference with the contract of two contracting parties, citing for authority several labor union cases. *E.g.*, *Minch v. Local 370, IUOE*, 44 Wn.2d 15, 265 P.2d 286 (1953); *Leo v. Local 612, IUOE*, 26 Wn.2d 498, 174 P.2d 523, 168 A.L.R. 1440 (1946). These cases do not support plaintiff's position; each involves a requisite third party, *i.e.*, an employee's relationship with his employer was interfered with by the third party union.

In any event, this issue has been specifically addressed in *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 277 P.2d 708 (1954) where at page 596 the court quotes approvingly from *Canister Co. v. National Can Corp.*, 96 F. Supp. 273, 274 (D. Del. 1951):

> an action for inducing a breach of contract will lie against a third party but a party to the contract itself can not be held responsible [in tort] for inducing himself to commit a breach of that contract or for conspiring to breach it."

Therefore the City of Redmond is incapable of tortiously interfering with the employment relationship between it and its employee, Houser.

Plaintiff attempts to distinguish the case at bench, however, by invoking the rule that an employer is bound by the misconduct or the negligence of his employee when the employee is acting in furtherance of the legitimate interests of his employer. *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 320 P.2d 311 (1958). Thus, plaintiff ingeniously

argues, the misconduct of "third party" city employees is imputed to the City of Redmond rendering it liable for a tort it could not otherwise commit. The plaintiff specifically alleges in his complaint that his discharge was the result of tortious misconduct performed by City of Redmond employees "in the course of their official duties." It is precisely because of this allegation that plaintiff's argument fails.

█ To be actionable, the interference must be both wrongful and unprivileged. *See Calbom v. Knudtzon*, 65 Wn.2d 157, 396 P.2d 148 (1964). Agents and employees are not subject to liability for inducing their principal's or employer's breach of contract if they act in their official capacity on behalf of their principal or employer. Their actions in this respect are privileged. *See May v. Santa Fe Trail Transp. Co.*, 189 Kan. 419, 370 P.2d 390 (1962); *Bliss v. Southern Pac. Co.*, 212 Ore. 634, 321 P.2d 324 (1958).

Thus, the claim that the City of Redmond is vicariously liable for its employees' interference fails because that conduct, being privileged, is not actionable. Only if defendant's employees had not acted within the scope of their official capacity could they have been liable for tortious interference, but then, of course, only in their personal capacity, because the doctrine of respondeat superior would not apply. *Hein v. Chrysler Corp., supra* at 599.

The judgment is reversed and the cause remanded with instructions to dismiss the action.

REED, J., and HALE, J. Pro Tem., concur.

Petition for rehearing denied March 9, 1977.

Review granted by Supreme Court July 27, 1977.