[No. 46569.   En Banc.   May 22, 1980.]

OLYMPIC FISH PRODUCTS, INC., *Respondent,* v. TED LLOYD, ET AL, *Defendants,* PAUL GLENOVICH,
ET AL, *Petitioners.*

*Ordal & Dearborn, P.S.,* by *Robert E. Ordal,* for petitioners.

*Monte E. Hester* and *James K. Adams,* for respondent.

DOLLIVER, J.—This case raises an issue of first impression in this state. We must determine the proper test for imposing liability upon a corporate officer for tortious interference with his corporation's contractual relations.

Plaintiff, Olympic Fish Products, Inc., alleged it entered into a contract with Yankee Fish Company to purchase all the roe herring produced by Yankee during 1973 at the price of $285 per ton; that Yankee honored the agreement for a time, but then discontinued the sales to Olympic and sold the herring to a third party at the price of $600 a ton.

As a result, Olympic was forced to purchase roe herring on the open market for a price higher than that agreed upon with Yankee.

Olympic brought two separate lawsuits, one against Yankee for breach of contract and the other against three individuals and their spouses for tortious interference with the business relationship between Yankee and Olympic. Defendant Glenovich, a corporate officer and director of Yankee, moved for summary judgment. He contended that he was an officer of Yankee and, therefore, was immune from liability for tortious interference with a business relationship. No affidavits accompanied the motion.

On the other hand, Olympic submitted two affidavits in opposition to Glenovich's motion for summary judgment. The affidavits disclosed Yankee to be a closely held corporation in which Glenovich and his wife own 50 percent of the stock and the wife of his deceased brother owns the other half. Yankee does not operate fishing boats of its own and must purchase its supply of herring from individually owned and operated fishing boats. Out of the seven boats which supplied Yankee with herring, four were owned and operated by Glenovich and his relatives.

The trial court granted Glenovich's motion for summary judgment. The Court of Appeals reversed, holding that the mere fact Glenovich was a corporate officer was insufficient to support the motion for summary judgment. *Olympic Fish Prods., Inc. v. Lloyd*, 23 Wn. App. 499, 597 P.2d 436 (1979). Glenovich appealed and his petition for review was granted. *Olympic Fish Prods., Inc. v. Lloyd*, 92 Wn.2d 1037 (1979).

An action for tortious interference with a contractual relationship lies only against a third party. A party to the contract cannot be liable in tort for inducing its own breach. *Houser v. Redmond*, 16 Wn. App. 743, 559 P.2d 577 (1977), *aff'd*, 91 Wn.2d 36, 586 P.2d 482 (1978); *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 277 P.2d 708 (1954). Initially, Glenovich contended that, because a corporation acts only through its agents (*Frigidaire Sales Corp. v. Union*

*Properties, Inc.,* 88 Wn.2d 400, 562 P.2d 244 (1977)), he cannot be personally liable for inducing Yankee to breach its contract with Olympic.

■ The privilege afforded a corporate officer, however, is not absolute. *Tash v. Houston,* 74 Mich. App. 566, 254 N.W.2d 579 (1977); *Wampler v. Palmerton,* 250 Ore. 65, 439 P.2d 601 (1968). We agree with the Court of Appeals that Glenovich's status as a corporate officer did not shield him as a matter of law from liability for tortiously interfering with contractual relations between Olympic and Yankee. We affirm the Court of Appeals and hold that an officer or director of a corporation is not personally liable for inducing the corporation to violate a contractual relation provided the officer or director acts in good faith. Good faith in this context means nothing more than an intent to benefit the corporation. *Olympic Fish Prods., Inc., supra* at 501, quoting *Wampler v. Palmerton, supra.*

> [S]o long as the person inducing the breach of a corporate contract is an officer or employe acting for the benefit of the corporation and within the scope of his authority, the plaintiff cannot show that this interest was invaded and therefore cannot maintain an interference with contract action.

*Olympic Fish Prods., Inc.,* at 501.

Glenovich alleges that the good faith test will have severe adverse consequences on the functioning of a close corporation. Defendant's arguments are not persuasive. First, he claims that officers and directors of closely held corporations will not give their corporations frank business advice because of the fear of personal liability. Officers and directors in a closely held corporation indirectly benefit from actions which benefit the corporation in the form of increased value of the stock or increased salaries due to greater earnings. Because of this personal benefit, Glenovich concludes a corporate officer may be subject to a lawsuit if he advises his corporation to breach a contract.

Good faith, however, is not equated with the lack of selfish interest in enhancing the financial condition of the

corporation. *Wampler v. Palmerton, supra.* Although corporate officers may benefit from a breach of contract, they need not curtail any advice as long as it is given with the intention to serve the best interests of the corporation. The good faith test merely prevents corporate officers from pursuing purely personal goals with no intent to benefit the corporation. In discussing the term "good faith" in this context, the Oregon Supreme Court observed:

> So long as the officer or employe acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation. In such a situation the officer is not liable for interfering with a contract of the corporation any more than the corporation could be liable in tort for interfering with it. The words "good faith" should not be employed to render a corporate officer or employe liable for engaging in morally questionable activities upon behalf of his principal that nevertheless would not be tortious if he were acting for himself as the party to the contract.

*Wampler,* at 76–77.

Next Glenovich argues that the good faith test will subject corporate officers and directors to dissident shareholder suits for failing to give the best business advice. He contends that a corporate officer may not advise his corporation to breach a contract if he fears that he may be personally liable in tort. Again, the good faith test as we have defined it will have no effect on the advice given if the officer intends to promote the best interests of the corporation. Moreover, since the officers in a close corporation are generally the shareholders, dissident shareholder suits are unlikely to occur.

Third, Glenovich asserts that the good faith test will increase litigation and that such litigation cannot be resolved on a motion for summary judgment. Such a fear is purely speculative. Unless the corporate officer disregards the best interests of the corporation for personal gain, no increase in litigation should ensue.

Finally, Glenovich states that there is no policy reason for the good faith test. We disagree. Where a corporate

officer induces a breach of contract solely for his personal gain, he should not be allowed to avail himself of the protection of the corporation.

Defendant proposes his own test for determining whether a corporate officer or director should be held personally liable for inducing the corporation to breach a contract:

> If a corporate officer or director causes his corporation to breach a contract with a third party not employed by the corporation, and if a reasonable man could believe that the breach of contract would reasonably benefit the corporation, the corporate officer or director's action is privileged.

Glenovich cites no authority for this test. We believe the good faith test as herein defined is not too harsh on corporate officers and directors, is supported by case law in other jurisdictions (*Vassardakis v. Parish,* 36 F. Supp. 1002 (S.D.N.Y. 1941); *Ong Hing v. Arizona Harness Raceway, Inc.,* 10 Ariz. App. 380, 459 P.2d 107 (1969); *W.P. Iverson & Co. v. Dunham Mfg. Co.,* 18 Ill. App. 2d 404, 152 N.E.2d 615 (1958); *Tash v. Houston, supra; Pennington Trap Rock Co. v. Pennington Quarry Co.,* 22 N.J. Misc. 318, 38 A.2d 869 (1944); *Buckley v. 112 Central Park S., Inc.,* 285 App. Div. 331, 136 N.Y.S.2d 233 (1954). *See generally Liability for Procuring Breach of Contract,* Annot., 26 A.L.R.2d 1227, § 42 at 1269–70 (1952); Avins, *Liability for Inducing a Corporation to Breach its Contract,* 43 Cornell L.Q. 55 (1957); H. Ballantine, *Corporations* § 112 (rev. ed. 1946)), and will protect those legitimate interests about which defendant is concerned. It is not unreasonable to require a corporate officer to show the action was taken for the benefit of the corporation. This good faith test simply requires a corporate officer to show the reasonableness of the actions taken rather than relying on the reasonableness of the belief of that abstraction known as the "reasonable person". We do not believe this requirement will stultify the leadership of corporate officers in this state.

Glenovich asks this court to reverse the Court of Appeals and affirm the trial court's summary judgment in

his favor. The purpose of summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979). The burden of proving by uncontroverted facts that no genuine issue exists is upon the moving party. *Ohler v. Tacoma Gen. Hosp., supra; LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Graves v. P.J. Taggares Co.,* 25 Wn. App. 118, 605 P.2d 348 (1980). The motion will be granted only if, after viewing the pleadings, depositions, admissions and affidavits and all reasonable inferences that may be drawn therefrom in the light most favorable to the nonmoving party, it can be stated as a matter of law that (1) there is no genuine issue as to any material fact, (2) all reasonable persons could reach only one conclusion, and (3) the moving party is entitled to judgment. *Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 136, 566 P.2d 972 (1977).

Glenovich filed no affidavits in support of his motion for summary judgment. Rather, he relied solely on the pleadings and Olympic's admission that he was a corporate officer. Olympic, on the other hand, filed affidavits which raised the question of whether Glenovich had a good faith intention to benefit Yankee when he induced the breach of contract. Under the good faith test, the question of a corporate officer's intent is one of fact. *Vassardakis v. Parish, supra.*

Olympic's affidavit showed that Glenovich gained more than an incidental benefit from the enhanced position of Yankee because of his unique relationship with the corporation. As a result of the breach, Glenovich received a higher price for the herring he sold to Yankee. Thus, the question remains whether Glenovich was acting solely for his own benefit rather than in the best interests of Yankee.

Glenovich failed to meet his burden of proving that no genuine issue of material fact existed. A trial is necessary to resolve the issue of good faith, *i.e.,* did defendant act within the scope of his authority and were the actions for the benefit of the corporation. Therefore, summary judgment is

improper. *Mellor v. Budget Advisors, Inc.,* 415 F.2d 1218 (7th Cir. 1969); *Tash v. Houston, supra.*

The opinion of the Court of Appeals is affirmed, and the case is remanded for trial.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACH-TENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.